**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| YAAKOV KILBERG, <br><br> Plaintiff, <br><br> v. <br><br> DISCOVER FINANCIAL SERVICES, <br><br> Defendant. | Civil Action No. 16-5168 (MAS) (LHG) <br><br> **MEMORANDUM OPINION** |

**SHIPP, District Judge**

    This matter comes before the Court upon Defendant Discover Financial Services'[1] ("Discover" or "Defendant") Motion to Compel Arbitration and Stay Proceedings. (ECF No. 9.) Plaintiff Yaakov Kilberg ("Plaintiff") filed opposition (ECF No. 12), and Defendant replied (ECF No. 13). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, Defendant's Motion to Compel Arbitration and Stay Proceedings is GRANTED.

**I.    Background**

    Plaintiff opened a credit card account with Defendant in July 2010. (Dontsis Decl. ¶ 7, ECF No. 9-2.) "Discover has a contractual relationship with its cardmembers pursuant to its written Cardmember Agreement, which sets forth the terms and conditions that govern accounts and the relationship between the parties." (*Id.* ¶ 8.) Upon opening Plaintiff's credit card account, his

---

[1] Plaintiff incorrectly pled Defendant in the Complaint as Discover Financial Services. (*See* Compl. ¶ 3, ECF No. 1.) Defendant, rather, is Discover Products Inc. (*See* Def.'s Answer 1, ECF No. 4.)

Discover Card and Cardmember Agreement "were mailed to him, postage prepaid, at the address he provided on his application." (*Id.*) Contained in that Cardmember Agreement is the following provision:

> **Your Acceptance of this Agreement.** The use of your Account or a Card by you or an Authorized User, or your failure to cancel your Account within 30 days after receiving a Card, means you accept this Agreement, including the Arbitration of Disputes section on page 11. **You may, however, reject the Arbitration of Disputes section** as explained on page 13.

(*Id.* Ex. 1, at 2, ECF No. 9-2.) The above-mentioned arbitration provision states, in pertinent part:

> **Arbitration of Disputes.** *Agreement to arbitrate*. In the event of any past, present or future claim or dispute (whether based upon contract, tort, common law or equity) between you and us arising from or relating to your Account, any prior account you have had with us, your application, the relationships which result from your Account or the enforceability or scope of this arbitration provision, of the Agreement or of any prior agreement, you or we may elect to resolve the claim or dispute by binding arbitration. IF EITHER YOU OR WE ELECT ARBITRATION, NEITHER YOU NOR WE SHALL HAVE THE RIGHT TO LITIGATE THAT CLAIM IN COURT OR TO HAVE A JURY TRIAL ON THAT CLAIM. PRE-HEARING DISCOVERY RIGHTS AND POST-HEARING APPEAL RIGHTS WILL BE LIMITED. . . . **Right to Reject Arbitration. You may reject the Arbitration of Disputes section by providing us a notice of rejection within 30 days after receiving a Card** . . . .

(*Id.* Ex. 1, at 11-13.) "[Defendant's] records reflect that Plaintiff used his Discover Card after receiving his Cardmember Agreement . . . ." (*Id.* ¶ 9.) Defendant's records also do not indicate that Plaintiff rejected the arbitration provision. (*Id.* ¶ 12.) Defendant did, however, change portions of the arbitration provision in or around October 2014. (*Id.* ¶ 16.) Plaintiff was notified of such change "pursuant to the 'Changes To Your Agreement' provision of the Cardmember Agreement." (*Id.* ¶¶ 13, 16.) Plaintiff continued to use his Discover Card and make payments to his credit card account after changes were made to the arbitration provision. (*Id.* ¶ 17.) The Cardmember

2

Agreement also contains a choice-of-law provision, which provides that federal and Delaware law apply to the agreement and disputes arising out of it. (*Id.* Ex. 1, at 13.)

On August 4, 2016, Plaintiff—a resident of the State of New Jersey—filed suit against Defendant—a corporation with its principal place of business in Illinois—alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. (Compl. ¶¶ 1-3, ECF No. 1.) Plaintiff alleges that, in or around August 2015, Defendant began contacting Plaintiff's mobile number by means of an autodialer.[2] (*Id.* ¶ 7.) Plaintiff maintains that he contacted a representative of Defendant twice, requesting not to be contacted via autodialer. (*Id.* ¶¶ 8-13.) Despite his two requests, Plaintiff alleges that Defendant continued to contact him via autodialer, which amounted to 402 calls. (*Id.* ¶ 14.)

On September 21, 2016, Defendant filed its Answer and Affirmative Defenses. (ECF No. 4.) Within this pleading, Defendant asserted, as an affirmative defense, that "Plaintiff's claims are subject to binding arbitration pursuant to the arbitration agreement contained in the terms and conditions governing Plaintiff's credit card account with Discover and/or its affiliates." (*Id.* at 4-5.) Defendant also set forth that it "reserve[d] its rights to compel arbitration pursuant to the applicable agreement agreed to by Plaintiff." (*Id.* at 5.) Approximately six months thereafter, Defendant moved to compel arbitration and stay the proceedings. (Def.'s Mot. to Compel, ECF No. 9.)

---

[2] Plaintiff does not provide the Court with the context for these alleged calls. (*See generally* Compl.) Defendant, however, submits that the calls were made to Plaintiff "in connection with one or more credit card accounts issued to Plaintiff." (Def.'s Answer ¶ 7.)

3

## II. Legal Standard

When a party files suit in district court "upon any issue referable to arbitration under an agreement in writing for such arbitration," the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement[.]" 9 U.S.C. § 3. If a party, in accordance with its motion to compel arbitration, requests a stay, the court "is obligated under 9 U.S.C. § 3 to grant the stay once it decide[s] to order arbitration," and may not, instead, dismiss the matter. *Lloyd v. HOVENSA, LLC*, 369 F.3d 263, 269 (3d Cir. 2004).

There are two factors that a court must consider in determining whether it is appropriate to compel arbitration: "(1) a valid agreement to arbitrate exists, and (2) the particular dispute falls within the scope of the agreement." *Kirleis v. Dickie, McCartney & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009). In determining whether a valid agreement exists, courts turn to state-law principles governing contract formation. *First Options of Chic., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). "It is well established that the [FAA] reflects a 'strong federal policy in favor of the resolution of disputes through arbitration.' . . . But this presumption in favor of arbitration 'does not apply to the determination of whether there is a valid agreement to arbitrate between the parties.'" *Kirleis*, 560 U.S. at 160 (citations omitted). Instead, in determining whether a valid agreement exists, courts look to "ordinary state-law principles that govern the formation of contracts." *Id.* (quoting *First Options of Chic., Inc*, 514 U.S. at 944).

A court seeking to determine whether a particular dispute falls within the scope of an arbitration agreement "is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract." *Meditronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d 44, 55 (3d Cir. 2001) (citation omitted). All doubts concerning

the scope of an arbitration agreement should be resolved in favor of arbitration, as federal policy favors arbitration. *Id.* "An order to arbitrate 'should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Id.* (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582-83 (1960)).

### III. Parties' Positions

#### A. Defendant's Arguments

Defendant maintains that the Federal Arbitration Act (the "FAA") applies because the instant matter involves interstate commerce. (Def.'s Moving Br. 4, ECF No. 9-1.) Specifically, Defendant argues that "Plaintiff is a resident of New Jersey and Defendant is a Delaware bank with its principal place of business in Chicago[, Illinois]."[3] (*Id.* at 4-5 (citing Dontsis Decl. ¶ 4).) The Cardmember Agreement also provides that "the Account involves interstate commerce, and [such] provision shall be governed by the [FAA]." (*Id.* (quoting Dontsis Decl. Ex. 1, at 11).) As such, Defendant argues that the FAA "governs the arbitration provision in the Cardmember Agreement." (*Id.*)

Defendant submits that it is appropriate for the Court to enforce the arbitration provision under the FAA because it is valid and enforceable, and its scope contemplates TCPA claims.[4] (*Id.* at 8, 10.) Defendant maintains that Delaware law controls in determining the validity of the arbitration provision. (*Id.* at 9.) "Under Delaware law, use of a credit card will bind the card holder

---

[3] The parties are in disagreement with regard to the state in which Defendant is incorporated. There is no indication, however, that the parties are domiciled in the same state.

[4] Defendant also submits that the TCPA is within the scope of the arbitration provision. (*Id.* at 10-11.) Defendant argues that the arbitration provision is broad, and explains that "[t]he presumption in favor of arbitrability 'is particularly applicable where the clause is as broad' as it is in this case." (*Id.* at 10 (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)).)

5

to a cardmember agreement governing a credit card account." (*Id.* (quoting *Dwyer v. Discover Fin. Servs.*, No. 15-2322, 2015 WL 7754369, at *2 (D. Md. Dec. 2, 2015)).) Defendant maintains that "it is undisputed that [Plaintiff] repeatedly used [his Card], [and, therefore,] he accepted the Cardmember Agreement and its arbitration provision." (*Id.*) Accordingly, Defendant argues that the arbitration provision is valid and enforceable.

Finally, Defendant asserts that it has not waived its right to arbitrate, as its intentions were noted as an affirmative defense in Defendant's Answer, in the December 25, 2016 joint discovery plan, and have been informally discussed since the initiation of the suit. (Def.'s Reply Br. 4, ECF No. 13.) Further, Defendant submits that the litigation until now has consisted only of "initial pleadings, a joint discovery plan, a scheduling conference and Order, and limited exchanges of written discovery." (*Id.* at 5.) According to Defendant, Plaintiff fails to realize that much of the discovery already obtained can be used in arbitration. (*Id.* at 6.) Defendant argues that this action is subject to arbitration and, therefore, the Court should stay the proceedings pending the result of the arbitration. (*Id.* at 8.)

### B. Plaintiff's Arguments

Plaintiff argues that Defendant has waived its right to compel arbitration. (Pl.'s Opp'n Br. 4, ECF No. 12.) Plaintiff contends that because this matter has been ongoing for eight months, an order compelling arbitration at this juncture would significantly prejudice Plaintiff. (*Id.*) Plaintiff submits that Defendant should have moved to compel arbitration at the outset of the litigation instead of proceeding with the action. (*Id.*) Plaintiff further asserts that Defendant could have moved to compel arbitration through discovery and during the December 21, 2016 scheduling conference before the Honorable Lois H. Goodman, U.S.M.J. (*Id.* at 5.) Plaintiff argues that Defendant offers no reason for choosing to compel arbitration now, other than the fact that it is

6

included in the Cardmember Agreement. (*Id.* at 4.) Plaintiff maintains that, "[i]f Defendant's motion is granted, six months of work will all be for naught, and the parties will be forced to start all over again. This would amount to a colossal waste of time for the parties themselves as well as this Court." (*Id.* at 6.)

IV. <u>Discussion</u>

To determine whether it is appropriate to compel arbitration in this matter, the Court must first determine whether the parties' arbitration agreement is valid and whether a TCPA claim falls within the scope of the Cardmember Agreement. *See Kirleis*, 560 F.3d at 160. Here, Plaintiff does not dispute that the Cardmember agreement applies. (*See generally* Pl.'s Opp'n Br.) As such, and in accordance with the choice-of-law provision in the Cardmember agreement, the Court will apply Delaware law to determine the validity of the agreement. (*See generally* Dontsis Decl. Ex. 1, at 13.)

Under Delaware law, contracts are formed by means of an offer and an acceptance. *Grasso v. First USA Bank*, 713 A.2d 304, 308 (Del. 1998). "Acquiescence to the terms of the offer generally constitute acceptance." *Id.* (citation omitted). "An act or conduct must show acceptance to an offer but the act must be intentional." *Id.* (citation omitted). "[I]ntent to accept is presumed absent contrary words or conduct." *Id.*

Here, the Cardmember agreement contains an acceptance provision. (Dontsis Decl. ¶ 9.) The acceptance provision states, in relevant part:

> The use of your Account or a Card by you or an Authorized User, or your failure to cancel your Account within 30 days after receiving a Card, means you accept this Agreement, including the Arbitration of Disputes section on page 11. **You may, however, reject the Arbitration of Disputes section** as explained on page 13.

7

(*Id.*) Defendant maintains that it opened a Credit Card Account for Plaintiff in July 2010. (*Id.* ¶ 7.) Subsequently, on September 14, 2010, Defendant's records indicate that Plaintiff used his credit card. (*Id.* ¶ 9.) Defendant's records also indicate that Plaintiff "did not provide notice of his rejection of the arbitration provision and continued to use the Credit Card Account thereafter." (*Id.* ¶ 12.) Defendant did, however, amend the Cardmember agreement in or around October 2014. (*Id.* ¶ 16.) According to Defendant, "[p]ursuant to the 'Changes To Your Agreement' provision in the Cardmember Agreement, . . . Plaintiff was afforded the opportunity to reject any changes and close the Credit Card Account." (*Id.* ¶ 13.) Defendant submits that Plaintiff did not reject any of the changes and continued to use his credit card after he received such notification. (*Id.* ¶¶ 13, 17.) Based on the parties' submissions, the Court finds that a valid contract was formed between the parties at this time, making the Cardmember agreement, and thus the arbitration provision, valid. *See, e.g.*, *Grasso*, 713 A.2d at 308-09 (finding that use of a credit card constituted acceptance of a credit card agreement); *Dahlink Fin. Corp. v. Bochniak*, No. 11-5047, 2012 WL 1415815, at *7 n.17 (Del. Ct. Comm. Pl. Mar. 13, 2012) (finding same).

To determine whether a TCPA claim is within the scope of the arbitration provision, the Court examines the text of the provision to ascertain whether "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Meditronic*, 247 F.3d at 55. Upon the Court's review of the arbitration provision and the parties' submissions, the Court finds that a TCPA claim naturally arises from and is related to Plaintiff's Credit Card Account because it involved autodialed telephone calls to Plaintiff concerning the outstanding balance of his Credit Card Account. (*See* Dontsis Decl. Ex. 1 at 11-13.) Accordingly, it is within the scope of the arbitration provision.

The remaining issue is whether Defendant waived its right to arbitrate. Although a valid and enforceable arbitration agreement may exist, it is possible for a party to waive its right to arbitrate by "actively participating in a lawsuit." *Healy v. Silverhill Const. Co.*, No. 06-03-030, 2007 WL 2769799, at *1 (Del. Ct. Comm. Pl. Sept. 19, 2007). Under Delaware law, "[w]aiver of the right to arbitrate requires intentional relinquishment of a right with both knowledge of its existence and manifested intention to relinquish it." *Id.* "Since this waiver cannot be lightly inferred, the party seeking to prove waiver of arbitration must do so by clear and convincing evidence." *Id.*

Here, it is evident that Defendant never intended to waive its right to arbitrate. At the outset of this litigation, Defendant reserved its right to arbitrate. (*See* Def.'s Answer 4-5.) Further, the Court finds that the parties have not engaged in litigation or discovery so extensive as to constitute a waiver of the parties' rights to arbitrate. Discovery has been limited and no dispositive motions have been filed. Accordingly, the Court finds that Defendant has not waived its right to arbitrate and finds that there will not be significant prejudice to Plaintiff in compelling arbitration in this matter. *See, e.g.*, *Credit Accept. Corp. v. Liggon*, No. 16-3564, 2017 WL 2895911, at *3 (Del. Ct. Comm. Pl. July 7, 2017) (finding that the parties had not engaged in extensive litigation or discovery where a complaint, answer, and counterclaim were filed before the plaintiff moved to compel arbitration); *Healy*, 2007 WL 2769799, at *2 (finding that a party waived its right to arbitrate due to extensive litigation because the matter went to trial).

**V.   Conclusion**

For the reasons set forth above, Defendant's Motion to Compel Arbitration and Stay Proceedings is GRANTED and this matter is stayed and administratively terminated pending arbitration. An order consistent with this Memorandum Opinion will be entered.

/s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

Dated: August 16th, 2017